53 F.3d 338
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Patrick CROSBY, Petitioner,
v.
UNITED STATES DEPARTMENT OF LABOR; Hughes Aircraft Company,
Respondents,
 No. 93-70834.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1995.
Decided April 20, 1995.
 
 Before: McKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Patrick Crosby appeals the Secretary of Labor's adoption of an administrative law judge's recommended decision and order to the effect that Crosby was not discriminated against by his former employer, Hughes Aircraft Company, in violation of the whistleblower provisions of various federal environmental statutes.[1] The Secretary ruled that Crosby had not shown that Hughes had terminated him for protected rather than non-discriminatory business reasons. We deny the petition.
 
 
 3
 If an employee has made out a prima facie case of retaliatory discharge, the burden of production shifts to the employer to show that it had legitimate, nondiscriminatory reasons for its actions. See St. Mary's Honor Ctr. v. Hicks, U.S. , , 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993). If it does so, the production burden shifts back to the plaintiff to show that those reasons were pretextual. Id. More to the point for purposes of this appeal, once an employment discrimination case has been tried, as this one has been, the only truly relevant question is whether the plaintiff has met his ultimate burden of proving to the trier of fact that he was the victim of intentional discrimination. See id. at , 113 S. Ct. at 2747-48.
 
 
 4
 The Secretary's decision should be upheld unless it is unsupported by substantial evidence or is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. Sec. 706(2)(A), (E) (Administrative Procedure Act); Lockert v. United States Dep't of Labor, 867 F.2d 513, 516-17, 520 (9th Cir. 1989).
 
 
 5
 Here the Secretary determined that the reasons for Crosby's termination were that his work was not good and he was often insubordinate. Moreover, the final straw was his absolute refusal to work on the PPUP project because he did not like the protocol for the performance of that task. We understand that he sought to retract the refusal; alas, the decision had already been made.
 
 
 6
 Crosby does not contend that the actual working conditions related to the PPUP project were unsafe or unhealthy. "Employees have no protection ... for refusing to work simply because they believe another method, technique, procedure or equipment would be better or more effective." Pensyl v. Catalytic, Inc., Case No. 83-ERA-2, at 8 (Sec. Dec. Jan. 13, 1984). When an employee's refusal to work does not meet the Pensyl test, an employer may legitimately terminate the employee. Wilson v. Bechtel Constr., Inc., Case No. 86-ERA-34, at 12 (Sec. Dec. Jan. 9, 1988). The record is filled with evidence of incidents of Crosby's supervisors' dissatisfaction with his work, which began long before he engaged in any protected activities at issue here. From the very beginning of his work for Hughes he resisted completing assignments given to him, refused to work on certain projects and even refused to pass on information to those who were brought in to complete the projects. Finally, he was asked to perform work on PPUP. His reaction was characteristic. He objected to the whole thing and finally said he would not work on the project at all. In short, there is evidence that Crosby fairly bristled with antagonism, complaints, foot dragging, insubordination, and fractiousness. The ALJ and the Secretary decided that his termination was based upon that. There is substantial evidence to support the decision.
 
 
 7
 It is noteworthy that the individuals who terminated Crosby did not even know of most of his alleged protected activity. While they did hear him complain about PPUP, they did not understand that he was complaining about a possible environmental problem related to a gas detector system if PPUP were used with that system. What they did understand was that Crosby was, once again, refusing to do work that he was directed to do. The Secretary did not err when he found that Crosby was discharged for proper reasons.[2]
 
 
 8
 Crosby, however, complains of the procedures used to reach a decision in this case. He says that he was entitled to a continuance because certain discovery was delivered late. But though that continuance was denied him, after two days of hearings the proceeding was adjourned for five weeks. Thus, he effectively got his continuance anyway. He also asked that adverse inferences be drawn against Hughes because of the lateness of the discovery and because Hughes asserted a privilege as to some discovery which was sought. But the issue of sanctions is left to the discretion of the ALJ, and we see no abuse of that discretion here. See 29 C.F.R. Sec. 18.6(d)(2)(i). Moreover, it is not appropriate to draw adverse inferences from the failure to produce documents protected by the attorney-client and work product privileges. See Wigmore on Evidence Sec. 291 (rev. 1979).
 
 
 9
 Crosby further complains that he did not get to examine certain subpoenaed witnesses after the district court refused to enforce a subpoena for them. He said that adverse inferences should have been drawn, but the ALJ determined that their testimony would have been immaterial. Moreover, Crosby did have an opportunity to examine the officials who actually fired him. We see no reversible error.
 
 
 10
 Finally, Crosby complains that certain offers of proof were improperly relied upon. Those were made when the ALJ refused to hear testimony from certain Hughes witnesses and allowed Hughes to protect the record by stating what the witnesses' testimony would have been. The ALJ did not rely upon the offers at all. While the Secretary did refer to them, those occasional references were not necessary to the final decision and were accompanied by references to proper evidentiary matter. We are unable to say that Crosby's substantial rights were affected by those stray, though improper, references. See 29 C.F.R. Sec. 18.103.
 
 
 11
 PETITION DENIED.
 
 
 
 *
 Hon. Monroe G. McKay, Senior United States Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Originally, Crosby brought his action under the provisions of the Clean Air Act, 42 U.S.C. Sec. 7622, and the Toxic Substances Control Act, 15 U.S.C. Sec. 2622. The Secretary granted his post-trial motion to amend his complaint to include a cause of action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9610
 
 
 [2]
 The parties spill much ink over whether Crosby spelled out a prima facie case. We, of course, recognize that a prima facie case is the first step in a trial of this kind. However, given the ultimate determination, there is no need for us to delve into the intricacies of prima facie case building